**In the Matter of Ralph V. ESTEP, Respondent.**

**No. 647, 2006.**

Supreme Court of Delaware.

Submitted: Aug. 7, 2007.
Decided: Aug. 15, 2007.

William J. Rhodunda, Jr., Esquire, Oberly, Jennings & Rhodunda, Wilmington, Delaware, for the Respondent.

Patricia B. Schwartz, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

PER CURIAM.

The Respondent, Ralph V. Estep, is a public accountant with an office in Wil-

mington, Delaware. The Respondent is not authorized to practice law in Delaware or any other jurisdiction. On October 30, 2006, this Court issued an order directing that the Respondent cease and desist the unauthorized practice of law ("Cease and Desist Order").

On December 11, 2006, the Office of Disciplinary Counsel ("ODC") filed a Petition for a Rule to Show Cause in this Court, alleging that the Respondent was in violation of the Cease and Desist Order.[1] On February 21, 2007, we referred this matter to the Board on the Unauthorized Practice of Law ("Board") to make findings of fact and recommendations concerning the contemptuous conduct alleged in ODC's petition.[2] On April 10, 2007, the Board conducted an evidentiary hearing during which it heard testimony from various witnesses and accepted documentary evidence.

On May 25, 2007, the Board filed its Findings of Fact and Recommendations for Sanctions. The Board found in the Respondent's favor on Counts I and XI of the Amended Petition. Regarding the remaining nine counts in the Amended Petition, the Board found that the Respondent's conduct was contemptuous and a "blatant attempt" to avoid this Court's Cease and Desist Order. The Board recommends that the Respondent disgorge all fees associated with his contemptuous activities.

Both the Respondent and ODC have filed objections to the Board's factual findings and recommendations. This Court has concluded that all of the objections to the Board's factual findings are without

1. Prior to filing, ODC's Petition was approved by the Board's Chairman as required by the Board on the Unauthorized Practice of Law ("Board Rules"). See Bd. R. 19.

2. Id. We also permitted ODC to amend its original petition. On February 28, 2007, ODC filed an Amended Petition for Rule to Show Cause ("Amended Petition"). The Respondent answered the Amended Petition on March 9, 2007.

merit. This Court has carefully considered the Board's non-binding recommendations on the issue of sanctions. We have concluded that the appropriate sanctions are disgorgement of fees earned by the Respondent after the entry of the Cease and Desist Order and a $2000 fine for each of the nine counts of the Amended Petition found to have constituted a contempt of the Cease and Desist Order.

## CEASE AND DESIST ORDER RESPONDENT'S VOLUNTARY COMPLIANCE

On January 25, 2006, the ODC filed a petition with the Board alleging that the Respondent was engaged in the unauthorized practice of law. Specifically, ODC alleged the Respondent was: (1) acting in a representative capacity in a Delaware legal tribunal or governmental agency; (b) giving legal advice on matters relating to Delaware law; (c) drafting legal documents; and (d) holding himself out as authorized to practice law in Delaware. Board Rule 14 provides that "any time after a matter is initially docketed by the Office of Disciplinary Counsel, the respondent may voluntarily offer an assurance that the respondent shall not engage in the unauthorized practice of law in the State of Delaware." [3] On June 6, 2006, ODC and the Respondent appeared before the Board and jointly submitted a written settlement agreement captioned "Admitted Facts and Admissions of Conduct Constituting the Unauthorized Practice of Law" ("Admissions").

In the Admissions, the Respondent agreed that the "drafting of wills and trusts by a non-lawyer who is not authorized to practice law by the Delaware Supreme Court constitutes the unauthorized practice of law ..." The Respondent further agreed that "acting in a representative capacity in the Register of Wills, giving legal advice on matters relating to Delaware estate law, and drafting legal documents for use in the Register of Wills by a non-lawyer each constitutes the unauthorized practice of law ..." The Respondent agreed that he would "not draft wills and trusts, act in a representative capacity in the Register of Wills, give legal advice on matters relating to Delaware estate law, or draft legal documents for use in the Register of Wills and he would not advertise legal services related to 'wills,' 'trusts,' 'estate,' 'probate,' 'estate administration,' and 'estate and probate services' as services provided by his firm in any manner including print ads, yellow pages, billboards, on his letterhead, or elsewhere."

On July 31, 2006, the Board submitted its acceptance of the Respondent's Admissions, voluntary assurances and also submitted a proposed consent decree to this Court. We approved the Respondent's voluntary compliance agreement and entered the Cease and Desist Order as a consent degree. Following the entry of this Court's Cease and Desist Order, the Court of Chancery appointed Peter S. Gordon, Esquire, as receiver of the Respondent's unauthorized law practice.[4]

## EXCLUSIVE AUTHORITY AND JURISDICTION

■ This Court has exclusive authority and jurisdiction over matters involving the legal profession and the practice of law in

---

3. Bd. R. 14.

4. At that time, Mr. Gordon seized 283 files from the Respondent. In response, the Respondent drafted and mailed a letter to his clients dated November 13, 2006. The letter explained the Respondent's view of the actions and urged his clients to obtain their files.

the State of Delaware.[5] Pursuant to that authority, this Court established the Board on the Unauthorized Practice of Law.[6] This Court designated the ODC to evaluate, investigate and prosecute all matters relating to the unauthorized practice of law.[7]

### ENFORCEMENT PROCEEDINGS

The Rules of the Board delineate the structure and procedures for a comprehensive regulatory system intended to protect the public from occurrences of the unauthorized practice of law in the State of Delaware. Board Rule 14 provides that this Court's entry of an order approving the Respondent's voluntary assurance agreement shall be enforceable through contempt proceedings. Board Rule 19 authorizes the ODC to investigate any alleged violations of this Court's orders and to petition this Court for a rule to show cause why the Respondent should not be held in contempt. In accordance with Board Rule 19, we directed the Board to conduct an evidentiary hearing with respect to the Amended Petition filed by ODC and to submit a report with its factual findings and recommendations.

### UNAUTHORIZED LAW PRACTICE

■ The unauthorized practice of law is prohibited so that members of the public will receive legal representation only from a person who has demonstrated his or her competence to practice law by passing the bar examination,[8] as well as the character and fitness examination,[9] and who is sub-ject to the Delaware Lawyers' Rules of Professional Responsibility. As this Court explained fifty years ago:

> The profession thus established arose out of a public necessity for the exclusion from the practice of law of unqualified persons. The attorney thus became an officer of the court and an important adjunct to the administration of justice. The profession from the very start was affected with a public interest and was created for the protection of the public.

> Originally, anyone could practice law, but for the protection of the public it was found necessary to circumscribe that right. The advance of civilization and its material things has done nothing to change that fundamental fact. The existence of the legal profession is continued for the assistance of the public under limitations imposed by the court. Violations of those limitations are punished by the court through its process of citation for contempt.

> The admission of attorneys to practice, and the exclusion of unauthorized persons from practice lie within the province of this court. A violation of this court's exclusive right to license attorneys at law by presuming to practice law without such license is a contempt of its authority and punishable as such.[10]

The issue of what constitutes the unauthorized practice of law frequently arises in this and other jurisdictions in the con-

---

5. *Delaware Optometric Corporation v. Sherwood,* 128 A.2d 812 (Del.1957); *In re Member of the Bar,* 257 A.2d 382 (Del.1969); Del. Const. art. IV, § 1. *See* Supr. Ct. R. 86(c)(6).

6. Supr. Ct. R. 86.

7. Supr. Ct. R. 86. *See also* Board Rules 4, 5 6 and 19. *See also* Supr. Ct. R. 64.

8. Supr. Ct. R. 52(a)(7).

9. Supr. Ct. R. 52(a)(1).

10. *Delaware Optometric Corporation v. Sherwood,* 128 A.2d 812 (Del.1957). *See also Delaware State Bar Ass'n v. Alexander,* 386 A.2d 652 (Del.1978).

text of wills, trusts, and estate planning.[11] In this case, it is unnecessary for this Court to promulgate a comprehensive definition of the practice of law in those subject areas.

Our Cease and Desist Order was a consent decree entered as the result of a voluntary agreement between the Respondent and the ODC that was approved by the Board. In that agreement, the Respondent defined what conduct by him would constitute the unauthorized practice of law and represented to this Court that he would not engage in any of those defined prohibited activities. Accordingly, the issue is whether the Respondent engaged in the unauthorized practice of law as defined and agreed to by him in his Admissions and voluntary assurances to this Court that constituted the basis for the Cease and Desist Order.

### BOARD'S FACTUAL FINDINGS [12]

The Board's findings of fact and recommendations are as follows:

### (1) Count I of the Amended Petition–Giving Legal Advice/Impugning the Integrity and Validity of Court Orders

Count I of the Amended Petition avers that Respondent was in contempt of the Cease and Desist Order by giving legal advice to his clients in his letter of November 13, 2006. ODC further claims that this letter impugned the integrity and validity of Orders issued by the Delaware Supreme Court and the New Castle County Court of Chancery.[13] Respondent denies that his letter contains legal advice or that it impugned the Supreme Court's integrity.

■ It cannot be gainsaid that Respondent's letter was ill-advised, misleading and spiteful. Despite its offensive tone and distasteful wording, however, the Board did not find by clear and convincing evidence that Respondent's letter impugns the Supreme Court's integrity or the validity of the Cease and Desist Order.

Although Respondent's letter includes several passages that one could construe as rendering legal advice, there was no testimony presented by ODC that any of Respondent's clients construed the letter as giving legal advice or that they relied on the letter for this purpose. Absent such testimony, the Board does not find clear and convincing evidence that Respondent rendered legal advice in his letter.

For these reasons, the Board finds that ODC fails to meet its burden of proof with respect to Count I of the Amended Petition.

11. *See, e.g., Dayton Bar Assn. v. Addison,* 107 Ohio St.3d 153, 837 N.E.2d 367 (2005); *State ex rel. Indiana State Bar Ass'n v. Northouse,* 848 N.E.2d 668 (Ind., 2006). *See also* Jay M. Zitter, Annotation, Drafting of Will or Other Estate Planning Activities as Illegal or Unauthorized Practice of Law, 25 A.L.R.6th, 323 (2007).

12. These factual findings are taken verbatim from the Board's report. Findings of Fact and Recommendations for Sanctions dated May 25, 2007.

13. The Board makes no findings of fact relating to ODC's claim that Respondent's letter was contemptuous of the Chancery Court Order of November 9, 2006. This issue is beyond the powers conferred on the Board by Supreme Court Rule 86(c). This issue does not pertain to allegations of the unauthorized practice of law or the underlying Cease and Desist Order.

### (2) Counts II, III, IV and Count VI of the Amended Petition–Giving Legal Advice on Estate Law/ Drafting of Wills/Trusts/Powers of Attorney/Healthcare Directives/Deeds

Count II of the Amended Petition alleges that Respondent violated the Cease and Desist Order by rendering legal advice relating to Delaware estate law and drafting legal documents for use in the Register of Wills for Easter Burch ("Burch").

Count III alleges that Respondent violated the Cease and Desist Order by rendering legal advice relating to Delaware estate law and drafting legal documents for use in the Register of Wills for Yolanda and William Welsh ("Welsh").

Count IV alleges that Respondent violated the Cease and Desist Order by rendering legal advice relating to Delaware estate law and drafting legal documents for use in the Register of Wills for Bruce Abbott ("Abbott").

Count VI alleges that Respondent violated the Cease and Desist Order by rendering legal advice relating to estate law and drafting legal documents for use in the Register of Wills for Vivienne Titus ("Titus").

Respondent admits meeting with those named individuals to discuss estate planning but denies that he drafted any legal documents or that he rendered any legal advice.

As explained below, Respondent's routine business practice was essentially the same each time he met with clients to discuss estate planning. As such, unless otherwise noted, the Board's findings of fact are identical for Counts II, III, IV and VI of the Amended Petition.

Respondent met with Burch and her granddaughter, Susan Cooper ("Cooper"), on November 3, 2006 to discuss estate planning. This consultation was typical of Respondent's meetings with other estate planning clients. For example, Cooper took Burch to Respondent to draft a will. Cooper, her grandmother, Respondent and a "tall young lady" from Respondent's office were the only people present during the initial meeting. No Delaware lawyer was present. After interviewing Burch and taking detailed notes during this meeting, Respondent provided his notes to Leonard Kingsley ("Kingsley") an attorney admitted in Pennsylvania and New Jersey. Kingsley, who is not admitted to practice law in Delaware, then drafted a power of attorney, will and irrevocable trust for Burch as directed by Respondent. Respondent employed largely the same procedure regarding his estate planning work for Welsh, Abbott and Titus.

Kingsley maintains an office in West Chester, Pennsylvania. As part of his practice, he claimed to help Respondent with his legal problems, including counseling Respondent in terms of how to "limit the scope of inquiries from various branches of the Delaware government." Respondent pays Kingsley $8,000.00 per month to draft legal documents based on the notes Respondent generates as a result of his initial meetings with clients. Respondent maintains a master file of form documents for wills, trusts, healthcare directive and powers of attorney and Kingsley routinely used these forms to draft the legal documents as directed by Respondent. When Kingsley drafted the documents, he did so either at his home in Wilmington, Delaware or at his West Chester, Pennsylvania office.

The Board notes with interest that prior to November of 2006, Kingsley was actually an employee of Respondent's accounting firm, but ostensibly terminated his employment for fear of prosecution by ODC. When Kingsley was Respondent's employ-

ee, he performed these same services for Respondent.

In addition to drafting estate planning documents, Kingsley also drafted deeds transferring real estate for Respondent's clients. Kingsley always received instructions from Respondent as to what documents to draft. After Kingsley prepared the legal documents, he returned them electronically to Respondent's office. With only two exceptions, Kingsley never met with Respondent's clients.[14] The documents were then forwarded to Thomas McCracken, Esquire ("McCracken"), a member of the Delaware Bar. Kingsley never met with McCracken to discuss the documents.

Respondent and McCracken had a business agreement that was memorialized in a Memorandum of Understanding. Respondent testified that McCracken would draft documents, meet with clients and answer questions about the documents. But, Respondent's testimony on this point was directly contradicted by Kingsley and McCracken, both of whom testified that Kingsley, not McCracken, drafted the legal documents based on Respondent's instructions. The Board specifically found that Kingsley did the drafting, not McCracken.

McCracken received the draft legal documents electronically from Respondent but, unlike Kingsley, he did not receive Respondent's personal notes. McCracken played no role in determining what estate planning documents were prepared for Respondent's clients. Indeed, it is uncontroverted that none of Respondent's clients ever met McCracken before executing their legal documents. Their first introduction to their own lawyer was only moments before these documents were signed.

The Board found that Respondent's clients were intentionally misled about McCracken's role. When Respondent and McCracken met with clients to execute legal documents, the clients were presented a letter prepared by Respondent, but printed on McCracken's letterhead and signed by McCracken. This letter falsely informed the clients that McCracken "prepared the legal documents" to carry out the client's wishes. It also falsely stated that Respondent "and [McCracken] have decided that these documents will effectively carry out your intent from the estate and tax planning consultation you had with [Respondent]". Contrary to these representations, McCracken did not prepare the legal documents, nor did he form or express any opinions about whether the legal documents effectively carried out the client's intent.

Similarly, ODC questioned McCracken about deeds that were prepared for Respondent's clients. McCracken admits he did not prepare the deeds but did review them. The deeds falsely state they were prepared by McCracken. The Board finds that the deeds were prepared by Kingsley at Respondent's direction.

Welsh's consultation with Respondent was strikingly similar. Welsh contacted Respondent because he saw his advertisement in the " 'Lawyers' section in the yellow pages". On November 6, 2006, at the initial meeting with Respondent, Welsh's wife was not present, nor was McCracken. Welsh and his wife returned to Respondent's office approximately one week later. McCracken was present but said absolutely nothing when Welsh and his wife executed the legal documents. All questions posed by Welsh were answered by Respondent. After executing the documents, Welsh had concerns about the documents

---

**14.** Kingsley met with Titus once to answer a tax question. Kingsley was also present once during a meeting between Welsh and Respondent.

he executed, so he telephoned McCracken.[15] McCracken told Welsh that he would need to set up a meeting with Respondent to discuss his concerns. Thereafter, Welsh testified he met with Respondent and "another lawyer, some guy from around the Philadelphia area. He looked to me, he might have been Asian of some kind." The Board finds that Welsh is referring to Kingsley.

The Board heard similar testimony from Titus' daughter, Eileen Wolfe ("Wolfe"), who had accompanied her mother to meet with Respondent on October 23, 2006. During this meeting, Respondent reviewed a will previously prepared by an attorney and rendered legal advice that the will "had to be redone, that there are things missing and it wasn't written correctly". Wolfe, her sister, Titus, Respondent, and one of his secretaries were the only people present during the initial meeting. Again, McCracken was not present. The only time Titus met McCracken was the day the legal documents were executed, November 13, 2006. That day, Respondent went through the legal documents page by page explaining them to Titus. Thereafter, Titus signed the documents and McCracken was silent during this meeting.

McCracken's testimony corroborates Respondent's business practice. McCracken was admitted to the Delaware bar in April of 2003. He met Respondent when he responded to his advertisement in a local newspaper seeking a licensed Delaware attorney to assist him on legal matters on a part-time basis. McCracken explained that clients would make an appointment with Respondent's office. Respondent then emailed documents to McCracken for review. If McCracken had corrections, he would email the corrections. He never made any substantive changes to any of the legal documents. Rather, his only changes were grammatical, spelling or punctuation. If McCracken did not have corrections, he would notify Respondent's office. He also would later report to Respondent's office where the documents were executed by Respondent's clients.

McCracken described his role as merely ensuring that the documents complied with Delaware law. He did not exercise any independent judgment, give any legal advice to the clients or make any effort to determine whether the documents were consonant with the client's wants or needs. Indeed, as a Delaware lawyer, McCracken did not exercise any supervisory control or capacity over Respondent or Kingsley. In terms of billing, invoices were prepared by Respondent's office and a charge was placed on Respondent's bill for the services purportedly rendered by McCracken.[16]

Although not directly implicated in ODC's Amended Petition, Bernard J. Bialecki, Esquire's ("Bialecki") testimony was akin to McCracken's. Bialecki is a Delaware lawyer who also met Respondent in response to his newspaper advertisement. Bialecki entered into a similar facilitating business arrangement with Respondent whereby he would review legal documents to determine compliance with Delaware law. Bialecki also received legal documents electronically although he received them directly from Kingsley. Unlike McCracken, Bialecki claims he, on occasion, substantively discussed the docu-

---

15. Although McCracken claimed no memory of speaking with Welsh, the Board finds that Welsh did speak with McCracken.

16. The Board finds that McCracken rendered no legal services whatsoever. The Board further finds that Respondent accepted payment for McCracken's services but he never paid McCracken.

ments with Kingsley but did not receive Respondent's notes. Consequently, Bialecki's only knowledge of the client's wishes was what Kingsley communicated to him. Bialecki also never met with any of Respondent's clients before reviewing the documents. When the documents were executed, Bialecki was present but it was Respondent who reviewed the documents with his clients. Bialecki never explained any of the documents to the clients. Bialecki was paid directly by Respondent and his fees were also collected in the same fashion as part of Respondent's billing.

■ In summary, the evidence relating to ODC's allegations in Counts II, III, IV, and VI is largely uncontested. In the Admissions, Respondent voluntarily, and with the benefit of counsel, agreed that the drafting of wills and trusts by a non-lawyer, not authorized to practice law by the Delaware Supreme Court, constitutes the unauthorized practice of law. Respondent also admitted that he was engaged in the unauthorized practice of law by drafting wills and trusts and he agreed that he would not draft wills and trusts and other legal documents. The Board finds by clear and convincing evidence that Respondent's conduct violated both the substance and spirit of the Admissions and the Cease and Desist Order.

Respondent's business arrangements with Kingsley and McCracken constitute a transparent, nefarious attempt to circumvent the Cease and Desist Order and continue with "business as usual". The Board found that Respondent interviewed Burch, Welsh, Abbott and Titus and rendered legal advice to each regarding what legal documents they needed as part of their estate planning. Instead of drafting the legal documents himself, Respondent directed Kingsley to draft them for him. While Respondent did not himself perform the drafting, this isolated fact is no defense, because Kingsley, a non-Delaware lawyer, did the drafting at Respondent's direction, using Respondent's forms, for Respondent's pecuniary benefit. Respondent cannot avoid the terms of the Admissions and the Cease and Desist Order by concocting a contemptuous scheme whereby he directs a non-Delaware lawyer, as his agent, to draft legal documents in contravention of a Supreme Court Order.

■ The Board further found that after the documents were prepared, Respondent met with the clients to explain the documents, thereby rendering legal advice on matters relating to Delaware estate law. The only difference in Respondent's post-Admissions conduct is that he now had a Delaware lawyer present to witness the execution of the legal documents. A Delaware lawyer's mere presence does not empower Respondent to engage in conduct otherwise prohibited by the Admissions. This is particularly true considering the false representations made to Respondent's clients regarding McCracken's role in their estate planning. McCracken abdicated his ethical obligations as an advocate and directly contributed to Respondent's chicanery, thereby arming Respondent with a tepid scheme to avoid the Cease and Desist Order.

As such, the Board found clear and convincing evidence that Respondent violated the Cease and Desist Order by rendering legal advice relating to Delaware estate law and by drafting legal documents as alleged in Counts II, III, IV and VI.

### (3) Counts V, VII, VIII, IX and X–Giving Legal Advice/Acting in A Representative Capacity in the Register of Wills

Count V alleges Respondent violated the Cease and Desist Order by giving legal advice and acting in a representative ca-

pacity in the Register of Wills on behalf of Thomas McElhone ("McElhone").

Count VII alleges Respondent violated the Cease and Desist Order by giving legal advice and acting in a representative capacity in the Register of Wills on behalf of D'June Hunt ("Hunt").

Count VIII alleges Respondent violated the Cease and Desist Order by giving legal advice and acting in a representative capacity in the Register of Wills on behalf of Ann R. Fox ("Fox").

Count IX alleges Respondent violated the Cease and Desist Order by giving legal advice and acting in a representative capacity in the Register of Wills on behalf of Christine T. Dillow ("Dillow").

Count X alleges Respondent violated the Cease and Desist Order by giving legal advice and acting in a representative capacity in the Register of Wills on behalf of Betty Treml ("Treml").

With respect to these allegations, Respondent denies rendering legal advice as alleged, but admits preparing and mailing accountings to the Register of Wills as agent for McElhone, Hunt, Fox, Dillow, and Treml. In essence, Respondent denies he was acting in a representative capacity while assisting the aforementioned personal representatives in the Register of Wills. In particular, Respondent argues that the Admissions merely prohibit him from serving as personal representative in the Register of Wills.

The Board does not find this argument persuasive. In ¶ 12 of the Admissions, Respondent specifically agreed that he would not "act in a representative capacity in the Register of Wills, give legal advice on matters relating to Delaware estate law, or draft legal documents for use in the Register of Wills." Contrary to Respondent's position, the Board found that this language is not limited to merely prohibit-

ing him from acting as a personal representative. That language is much broader, and proscribes Respondent from acting in "any" representative capacity.

For each estate, the Board found that Respondent prepared and filed documents with the Register of Wills in violation of the Admissions. Moreover, Respondent prepared agent authorizations whereby his clients, as personal representatives of estates, appointed him as their "agent" before the Register of Wills. It is beyond peradventure that if Respondent was acting as an agent, *a fortiori,* he was acting in a representative capacity in violation of the Cease and Desist Order. It defies logic for Respondent to suggest otherwise merely because he labeled himself an "agent" as opposed to some different title. Based on the testimony and the documents admitted pertaining to these estates, the Board also found that Respondent rendered legal advice to the personal representatives in connection with the preparation and filing of these documents with the Register of Wills. For example, in his billing statement regarding the Estate of Anna Jane Floyd, Respondent's entries clearly state that he advised his client that she did not need an attorney when in fact a legal question arose regarding a real estate settlement. Instead, Respondent himself rendered legal advice to the client on what steps he believed the personal representative needed to take to clear up a title issue.

Respondent claims that the preparation of an inventory or final accounting for filing in the Register of Wills is essentially accounting work. Therefore, Respondent claims, he filed no legal documents. The Board disagreed.

■ To support his claim, Respondent presented testimony from Geoff Langdon ("Langdon"), the managing partner of Cover & Rossiter, a Public Accounting

Firm in Wilmington, Delaware. Ironically, the Board found Langdon's testimony supportive of ODC's position. In fact, Langdon's testimony established that Respondent's business practices in these matters went well beyond normally accepted accounting practices. Although Langdon testified that the preparation of an inventory and final accounting is largely "what accountants do", he also conceded that in his twenty years of accounting, he could think of only one instance where an accountant in his office actually filed the inventory and final accounting with the Register of Wills. Instead, Langdon testified, such filings are normally done by Delaware attorneys.[17] The Board finds Langdon's testimony an accurate representation of accepted accounting practices in Delaware. Consequently, by routinely preparing and filing inventories and final accountings, Respondent's conduct far exceeded the scope of accepted accounting practices in Delaware.

■ More pointedly, regardless of what the practice is in Delaware, Respondent violated his agreement that he would not draft legal documents for filing with the Register of Wills. He further violated his agreement that he would not act in a representative capacity or give legal advice pertaining to probate matters. The Board found clear and convincing evidence that Respondent violated the Cease and Desist Order as alleged in Counts V, VII, VIII, IX and X.

### (4) Count XI of the Amended Petition—Advertising

Count XI alleges that Respondent violated the Cease and Desist Order by advertising services related to " 'wills,' 'trusts,' 'estate,' 'probate,' 'estate adminis-

tration,' and 'estate and probate services.' " In particular, Respondent ran an advertisement in the Sunday Bulletin of St. John The Beloved Parish from November 5, 2006 through February 25, 2007.

■ As to this allegation, the Board found no violation. The advertisement clearly identifies Respondent's firm as "Public Accountants". All of the advertised services are offered in the context of "accounting". Nothing in the advertisement can be reasonably construed as offering legal services. Respondent correctly notes that when compared to the advertisements of other accountants in the yellow pages and elsewhere, his advertisement is very similar. The Admissions do not prevent Respondent from advertising accounting services. Consequently, the Board found no violation of the Cease and Desist Order relating to this particular advertisement.

### CONTEMPTUOUS CONDUCT ESTABLISHED

The Board found that the Respondent violated the Cease and Desist Order by engaging in the conduct set forth in Counts II, III, IV, V, VI, VII, VII, IX and X of the Amended Petition but that the conduct alleged in Counts I and XI was not contemptuous. The Board's findings of fact are supported by clear and convincing evidence and the product of a logical deductive reasoning process.[18] Accordingly, those factual findings by the Board are accepted by this Court and will constitute the basis for imposing sanctions upon the Respondent.

### SANCTIONS IMPOSED

■ The Court holds the Respondent in contempt for violating the Cease and De-

---

**17.** Langdon's testimony on this point was confirmed by the testimony of Peter S. Gordon, Esq.

**18.** Bd. R. 11.

sist Order, by engaging in the conduct set forth in Counts II–X of the Amended Petition. The Respondent is ordered to disgorge all fees received for legal services rendered following the entry of the Cease and Desist Order,[19] to wit:

(1) Count II, $950 constituting the Respondent's fees charged to Burch for estate planning and legal fees collected on behalf of McCracken;

(2) Count III, $1,750 constituting the Respondent's fees charged to Welsh for estate planning and legal fees collected on behalf of McCracken;

(3) Count IV, $395 constituting the Respondent's fees charged to Abbott for estate planning and legal fees collected on behalf of McCracken;

(4) Count V, $900 accounting fees charged to the Estate of William A. McElhone;

(5) Count VI, $995 constituting the Respondent's fees charged to Titus for estate planning and legal fees collected on behalf of McCracken;

(6) Count VII, $9,566.25 for fees charged to the Estate of Roe V. Cotman Hunt;

(7) Count VIII, $1,237.50 for fees charged to the Estate of Anna Jane Floyd;

(8) Count IX, $2,075 for fees charged to the Estate of Paul L. Dillow;

(9) Count X, none of the fees charged to the Estate of Carol A. Phillips were incurred after October 30, 2006.

In addition to disgorging the foregoing fees in the amount of $17,868.75, the Respondent is fined $2000 for each of the nine counts of contemptuous conduct. Therefore, the Respondent is ordered to pay the Clerk of this Court $35,868.75 within thirty days of the date of this Opinion.

This Court's Cease and Desist Order shall remain in full force and effect. Any further violations by the Respondent will be sanctioned in an escalated manner that is commensurate with such repeat offenses.

---

19. The Court accepts the Respondent's calculations of fees earned after the Cease and     Desist Order was entered.